ACCEPTED
01-15-00583-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
8/20/2015 3:48:18 PM
CHRISTOPHER PRINE
CLERK

No. 01-15-00583-CV

In the First Court of Appeals

THE HONORABLE MARK HENRY, COUNTY JUDGE OF

GALVESTON COUNTY,

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
8/20/2015 3:48:18 PM
CHRISTOPHER A. PRINE
Clerk

*Appellant*

v.

THE HONORABLE LONNIE COX,

*Appellee*

From the 56th Judicial District Court of
Galveston County, Texas, Cause No. 15CV0583

OBJECTION TO SECOND AND "FINAL"
MOTION TO EXTEND TIME

And

RENEWED MOTION TO ENFORCE
TEMPORARY INJUNCTION UNDER TRAPs 29.3 and 29.4

TO THE HONORABLE FIRST COURT OF APPEALS:

Appellee and this counsel would ordinarily not bother the Court with objections to a motion for extension. However, this case and the present motion, however, are different. The most recent motion is not only a transparent attempt at tactical delay, but outright financial extortion of one or more trial judges in Galveston County. See Exhibit "G", extract of August 19, 2015 County

1

Commissioners Court Meeting.  The traditional  principles of  forbearance no longer apply to this dispute.

Background

Compliance with the injunction  of July 6, CR 239 ff, was initially half hearted, with the Director of Justice Administration Bonnie Quiroga only gradually given keys, computers and  a promise of pay to be delivered on July 21.

Then, on July 14, 2015, Mr. Joseph Nixon of the firm of Beirne Parson & Maynard  entered as counsel and declared that Appellant would ignore the injunction. See letter of Joseph Nixon, July 14, 2015, Exh. A.  Thereafter, Ms. Quiroga's pay was denied, her computer access cut off, her phone cut off, and she was ousted from her previous quarters to a subsidiary room on the third floor of the Galveston County Justice Center.

On July 30, 2015, Counsel Nixon sent a letter (Exh. D) inviting Appellee Cox to "hire" a justice administrator at the same salary –slightly over $63,000— which the trial court had found to be arbitrary and a deliberate attempt to control the hiring process. CR 329, 333, p. 4, para. 4 *("…Respondent Henry abandoned his plan to force a hand-picked candidate as the judiciary's chief administrative officer, yet, used the ability to set the slary for the new position at a sufficiently low salary salary to continue to control the hiring process.")*

A few weeks later, County HR Director Peri Bluemer emailed Judge Cox with a similar suggestion. See Exh. E, Bluemer email of August 11, 2015. That email and its attachment from County Legal Director Robert Boehmer contain a suggestion that the County might artificially superimpose bureaucratic procedures to delay and the "reappointment" of individuals to the same jobs they presently hold but under different titles. The implicit threat is that some individuals might be without jobs and without pay, and publicly held hostage along with the administration of court functions in this dispute.

In response, this counsel sent a letter (Exh. F) to Mr. Nixon at 9:20 a.m. August 19, 2015, advising that the proposals of Ms. Bluemer and Mr. Nixon were violative of the injunction, and suggesting that any such actions should be preceeded by application to the trial court—at which time evidence could be heard regarding all violations to date of the inujunction. The present Motion followed about an hour later, at 10:48 a.m.

No Basis for ""Extension"

The August 19 Motion for a "Final" Extension does not even try to satisfy the requirements of TRAP 10.5. The Reporter's record was filed on July 17, 2015. Appellant's counsel has previously indicated that he had an important briefing commitment at the end of July.

Appellee accepts for these purposes and for the sake of argument that Appellant's counsel was "out of the office" and presumably out of commission for all of August 10. That single day is not a significant factor when one has about 20 working days to prepare a brief in an accelerated appeal.

Appellant's counsel cites no other specific assignments or deadlines which have absorbed his time.

However, since July 31, 2015, Appellant and his counsel **have** attempted to delay the progress of this accelerated appeal. See, e.g., the tediously captioned "Motion to Abate, Etc." filed on August 3, 2015.

Since July 31, Appellant has had 13 working days --arguably minus one for a dental appointment out of the office—and has nine days remaining. One can do a lot of briefing in 20 days, yet Appellant insists now on an extension taking the briefing deadline past September 1.

*Why?* The answers are revealing and disturbing.

### Tactical Delay—SB 1913

From the email of Ms. Bluemer and the attached email of Legal Director Robert Boehmer, it is apparent that Appellant wants to delay briefing past the initial effective date of SB 1913. Senate Bill 1913 as signed codifies the constitutional authority of the trial judges to select staff personnel for the position of Justice Administrator and similar, but retains—as it must under the

4

constitution—funding authority with the Commissioners' Court.  It appears to be the objective of Appellant, per Ms. Bluemer's missive, to superimpose procedures to hobble the "appointment" of people who are and have been doing the work in question for some time, i.e., to control the hiring process and further to control that process by the imposition of arbitrary and unreasonably low salaries. See Temporary Injunction, CR CR 329, 333, p. 4, Para. 6.

### Lawyers' Money

An even less inspiring reason is the bonanza which this case has become for Appellant's and numerous  counsel. See Exhibit  C, a reprint of the Galveston County Daily News Article of Sunday, August 8 2015. To date, the County has spent c. $177,000 in the mandamus proceeding and the case now on appeal.  In a two week period, the firm of Baker & Hostetler had **seven** attorneys working on this case, and has been paid  c. $147,000.  A single attorney working at $550 per hour charged and was paid c. $73,000 for his work over a two week period-- all of which produced the Temporary Injunction of July 6.

### Judges' Money

The response of Appellant to the public outcry over the fees paid to lawyers has been to violate wholesale the separation of powers clause by attempting to threaten one or perhaps all of Galveston's trial judges with economic retaliation.

At the Commissioners' Court meeting of Wednesday, August 19, Appellant and other Commissioners openly speculated about denying the trial judges the $18,000 per year supplement which has been paid for some years—ostensibly to defray the legal fees mentioned above. See Transcript, attached as Exhibit G hereto, and in particular pp. 5-6:

> COMMISSIONER GIUSTI:  How Much?
> COMMISSIONER DENNARD: That's the discussion. I think one factor is the amount of attorneys fees that we're incurring.
> COMMISSIONER GIUSTI: We're incurring more attorney's fees because you are having for [sic] trials.
> JUDGE HENRY: No. We are incurring attorney's fees because one of them sued me.
> COMMISSIONER GIUSTI: Oh, those fees. This could kind of look pretty Retaliatory, huh?
> COMMISSIONER DENNARD:  I don't think it's a question of retaliatory. I think it's a question of somebody has got to pay the bill. So where are those going to come from. Are they going to come out of general revenues or are they going to come out of  the – come from the folks who are responsible for the costs?

The proceedings of August 19, Exhibit G, reveal the objective of Appellant—to turn trial judges into subservient vassals of the Commissioners Court.  If one reads the transcript as favoring selective denial of a supplement to only one or a few of the trial judges, it would be a clear instance of direct and unconstitutional  influence.   On the other hand, if the $18,000 supplement were denied to all judges, it would simply be collective extortion against the  entire judiciary of Galveston County.

6

Renewed Motion for Enforcement
Under TRAPs 29.3 and 29.4

Until now, this Honorable Court appears to have indulged in an assumption of good faith and responsible behavior on the part of Appellant and those acting with him. That assumption is no longer warranted. It is now even more obvious that Appellant Henry and others are trying to "game" the system by administratively dismantling the Justice Administration System and superimposing administrative requirements and financial sanctions which will hold the trial courts and the justice system hostage.

## Prayer

The Court is urged to promptly DENY the latest Motion by Appellant, and further is re-urged to refer this case to the District Court for enforcement, or alternatively for hearings, receipt of evidence, and a report to this Court of Appeals, under TRAPs 29.3 and 29.4.

Respectfully submitted,
*/s/ Mark W. Stevens*
Mark W. Stevens
TBN 19184300
P. Box 8118
Galveston, Texas 77553
409.765.6306
Fax 409.765.6459
Email: markwandstev@sbcglobal.net
Counsel for
Lonnie Cox of the 56th Judicial District Court

7

Certificate of Compliance

The foregoing instrument in relevant parts contains 1,334   words in Times New Roman Type, with text double spaced and extended quotes in 2.0 spacing.

*/s/ Mark W. Stevens*

Mark W. Stevens

Certificate of Service

The foregoing was efiled and e-mailed PDF to Mr. Edward Friedman on August 20, 2015 at efriedman@bakerlaw.com, and also to James P. Allison (j.allison@allison-bass.com) ; J. Eric Magee (e.magee@allison-bass.com); and Phillip Ledbetter (p.ledbetter@allison-bass.com) and N. Terry Adams, Jr. at the firm of Beirne Maynard Parsons LLP (tadams@bmpllp.com) .  An additional copy of this instrument has been served via email to Mr. Joseph M. Nixon at the firm of Bierne, Maynard & Parsons (jnixon@bpmllp.com) and to James P. Allison at j.allison@allison-bass.com.

*/s/ Mark W. Stevens*

Mark W. Stevens

Exhibits

A     Joseph Nixon Letter of July 14, 2015
B     Mark Henry Memo to County Auditor July16, 2015
C     Galveston County Daily News Article, August 8, 2015
D     Joseph Nixon Letter of July 30, 2015
E     Peri Bluemer email of August 11, 2015
F     Mark W. Stevens Letter to Mr. Nixon of August 19, 2015
G     Transcript of Commissioners Meeting of August 19, 2015

**BEIRNE, MAYNARD & PARSONS, L.L.P.**

1300 POST OAK BOULEVARD

SUITE 2500

HOUSTON, TEXAS 77056-3000

JOSEPH M. NIXON

BOARD CERTIFIED
CIVIL TRIAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

(713) 623-0887

FAX (713) 960-1527

DIRECT DIAL: (713) 871-6809
EMAIL: JNIXON@BMPLLP.COM

July 14, 2015

Mark W. Stevens
Attorney at Law
P.O. Box 8118
Galveston, Texas 77553

VIA FIRST CLASS MAIL,
CERTIFIED MAIL,
FACSIMILE (409) 765-6459, AND
EMAIL markwandstev@sbcglobal.net

Re: Cause No. 15CV0583; *The Honorable Lonnie Cox, Local Administrative Judge, Galveston Co. v. The Honorable Mark Henry, County Judge, Galveston County*; in the 56th Judicial District Court of Galveston County, Texas

Dear Mr. Stevens:

I now represent the Honorable Mark Henry in the above-referenced case and have attached for your review a file-stamped copy of the Notice of Appeal which was filed on July 13, 2015. Because the appeal is based upon the court's denial of the plea to the jurisdiction and the trial court's incorrect assumption of subject matter jurisdiction, the entire proceeding, including the application of the temporary injunction, is stayed pursuant to Tex. Civ. Prac. & Rem. Code § 51.014(a)(8) and (b). You should further note that the filing of the notice of appeal suspended the temporary injunction pursuant to Tex. R. App. P. 29.1 (b) and Tex. Civ. Prac. & Rem Code § 6.001(b)(4).

Accordingly, Ms. Bonnie Quiroga will no longer be allowed access to Galveston County facilities, office or infrastructure other than that which is accessible to the public. She is, of course, not considered an employee of the County, has no job function or duties, and will not receive a salary or benefits from the County.

I realize it is not necessary for you to remind your client that this matter is no longer in either his jurisdiction or the jurisdiction of the trial court, if it ever was. Accordingly, any attempt to unilaterally enforce the temporary injunction by way of a new, ex parte verbal or written order will be met with the most rigorous of opposition utilizing all lawful means necessary to protect the civil rights of those who are County employees.

If you have any questions, please do not hesitate to contact me.

Very truly yours,

Joseph M. Nixon

2198919v.1 999999/114011

EXHIBIT "A" P. 1/4

A

Filed: 7/13/2015 8:13:35 PM
JOHN D. KINARD - District Clerk
Galveston County, Texas
Envelope No. 6048080
By: Shailja Dixit
7/14/2015 9:35:54 AM

CAUSE NO. 15-CV-0583

| | | |
|---|---|---|
| THE HON. LONNIE COX | § | IN THE DISTRICT COURT OF |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | 56TH JUDICIAL DISTRICT |
| | § | |
| THE HON. MARK HENRY, COUNTY | § | |
| JUDGE OF GALVESTON COUNTY, | § | |
| | § | |
| DEFENDANT. | § | GALVESTON COUNTY, TEXAS |

## NOTICE OF APPEAL

Defendant, The Honorable Mark Henry, County Judge of Galveston County, files this Notice of Appeal, pursuant to section 51.014(a)(8) of the Texas Civil Practice and Remedies Code and Rules 25.1 and 26.1(b) of the Texas Rules of Appellate Procedure, and would respectfully show the Court as follows:

1. Defendant, The Honorable Mark Henry, County Judge of Galveston County desires to appeal this Court's Order, signed June 23, 2015, that denies his Plea to the Jurisdiction in the above-captioned matter.

2. Defendant appeals to the First or Fourteenth Court of Appeals in Houston Texas. Defendant believes this interlocutory appeal should go to the First Court of Appeals because Defendant has previously filed a related (a) original proceeding, and (b) interlocutory appeal in the First Court of Appeals— both arising from this same case:

   a. No. 01-14-00820-CV; *In re Galveston County Judge Mark Henry, et al.;* and

   b. No. 01-15-00583-CV; *The Honorable Mark henry, Judge of Galveston County v. The Honorable Lonnie Cox.*

EXHIBIT "A" P. 2/4

3.     A copy of this Notice of Appeal has been served on all parties to the proceeding from which this interlocutory appeal is taken. *See* TEX. R. APP. P. 25.1(e), 28.1(b).

4.     This interlocutory appeal is an accelerated appeal under Rule 28.1 of the Texas Rules of Appellate Procedure and is not a parental termination or child protection case. TEX. R. APP. P. 28.1, 25.1(d)(6).

5.     This interlocutory appeal results in an automatic stay of all proceeding in the trial court during the pendency this appeal. TEX. CIV. PRAC. & REM CODE §51.014(b), (c).

Respectfully submitted,

BAKER & HOSTETLER LLP

By: *//s/ Edward L. Friedman*_____
     Edward L. Friedman
     Texas Bar No. 07462950
     efriedman@bakerlaw.com
     811 Main Street
     Suite 1100
     Houston, Texas 77002-6111
     Telephone: 713.751.1600
     Facsimile: 713.751.1717

Attorney for Defendant
The Honorable Judge Mark Henry

Exhibit "A" P, 3/4

2

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Notice of Appeal was sent to all counsel of record by email and facsimile on this 13th day of July, 2015 as follows:

/s/ Edward L. Friedman
Attorney for Defendant
The Honorable Judge Mark Henry

Exhibit "A" P. 4/4

3

# MEMORANDUM

TO:     Kevin Walsh,
        Galveston County Treasurer

FROM:   Mark Henry,
        Galveston County Judge

DATE:   July 16, 2015

RE:     Payroll for Unfunded and Unauthorized County Positions

---

As you are aware, the County may not pay or authorize salary disbursements to individuals who are neither county employees nor hold positions for which the county has not authorized payment. I have attached for your review a copy of the certified minutes from the Commissioner's Court meeting held on June 13, 2015. As you can see from these minutes, the Commissioner's Court voted for and issued an order removing from the budget the salary and position of Director of Judicial Administration. Previously, Ms. Bonnie Quiroga had been dismissed from that position, also by vote and order passed by the Commissioner's Court.

Although ancillary orders from District Courts have issued, those orders are suspended by the application of Tex. Civ. Rem. & Prac. Code §§ 6.001(b)(4) and 51.014(a)(8) and (b) and Tex. R. App. 29.1(b). Additionally, the Commissioner's Court has not voted to reinstate Ms. Quiroga, her salary, or the position of Director of Judicial Administration. As one member of the Commissioner's Court may not revoke or reverse the express order of a prior decision of the Commissioner's Court, the county should not disburse any payment, salary or funds whatsoever to Ms. Quiroga until such time as the entire Court has voted and ordered to do so. To date, a vote to alter the Commissioner's Court orders of June 13, 2015 has not occurred.

OBJECTION TO MEDIATION-Exhibit "B"

*B*

2199867v.1 999999/114011

# pring start

LDER
VS

r a sluggish start to the y summer season, island otels in July saw a slight rise iber of guests. But hoteliers g a wary eye on mass lay- oil and gas industry, which ould hurt both leisure and ookings.

ined from 45 properties ng a total of 4,708 island ow occupancy rose to 84.8 July, a 3 percent increase with the same month a The season's start wasn't so May and June, hotel oc- n the island saw year-over- nes, according to data from vel Research Report pro- the Galveston Park Board s, which oversees the city's nitiatives. The average daily ose properties dropped 0.1 $164.64 for July compared ar ago. Still, the island was ly to South Padre Island in ding some of the highest ho- n the state, according to the



Total number of island rooms in the 45 properties

**84.8%**

74.7%

**$164.64**

2

See tourism | A4

16 is required to pass. La Marque earned a 14.

See LMISD | A5

## Galveston

# County billed nearly $200,000 in Quiroga fight

**By CHACOUR KOOP**
The Daily News

An ongoing legal fight between county commissioners and judicial judges has cost taxpayers nearly $200,000.

Legal fees will increase as attorneys hired by commissioners for up to $550 per hour continue arguing a dispute over hiring and firing a top court administrator. The yearlong quarrel began in July 2014 when commissioners, citing poor work perfor- mance, fired Director of Justice Admin- istration Bonnie Quiroga. Judge Lonnie Cox blocked the termination two months later, arguing that because Quiroga's job included court duties, the move under-

See county bill | A9

## Index

| | | | |
|---|---|---|---|
| Bulletin Board | A8 | Obituaries | D4 |
| Lifestyle | C1 | Opinion | B6 |
| Lotto | A2 | Sports | B1 |
| Movies | C4 | TV Listings | B9 |



## Reel Report

Capt. Joe Kent writes that inshore fishing is slow, offshore in better
» B10

## COUNTY BILL

Continued from Page A1

mined the independence of the judiciary.

The county has racked up a total of $197,159.90 in legal fees since the wrangling started, according to documents obtained by The Daily News. A majority of the cost came from one trial. Baker & Hostetler, a national law firm with Houston office, billed the county $147,102.70 for two weeks of work completed by a seven-member legal team. It includes charges for time spent traveling, exchanging emails, phone calls, researching and arguing in court during a five-day trial in June. A lead attorney earned more than $73,000.

Commissioners Ryan Dennard and Ken Clark blamed Cox for the costly trial because he sued County Judge Mark Henry, forcing the county to hire outside legal counsel. Cox was attempting to stop commissioners from disobeying his court order reinstating Quiroga.

"Does (Cox) think it's worth it for him to be suing?" Dennard said. "We're spending the money because we got sued."

However, commissioners lost the case. A visiting judge ordered Quiroga be allowed to work until a January 2016 trial, stating in an order that Henry had irreparably damaged the judiciary. Commissioners appealed to an ap-



**Ryan Dennard**



**Ken Clark**



**Stephen Holmes**

**Joe Gi**

pellate court in Houston, where another law firm is now representing the county. Total legal costs obtained by The Daily News do not include fees incurred by the current firm because it has yet to submitted a bill to the county.

Other legal maneuvers attempted by commissioners have met dead ends. In an attempt to block Cox's order reinstating Quiroga, commissioners filed a petition to a panel of appellate court judges, who declined to hear the case in February. Commissioners then asked the full bench of judges for a decision. In April, the request was denied because judges said ordinary paths were available for the dispute. Still, commissioners voted to take the case to the state Supreme Court, which was immediately denied. Taxpayers paid Austin-based law firm Allison, Bass & Magee about $29,230 for consultation on the petitions.

"Sooner or later, you've got to wonder if somebody else isn't buying what you're selling," said Cox's attorney, Mark Stevens. "That little expedition seemed to have run the taxpayer dollars up to $30,000."

Some commissioners

expressed disappointment that compromise failed. At one point, the two sides negotiated a plan to create two positions, one reporting to commissioners and the other to judges. The issue of salary and a belief that each side had overstepped its governmental authority contributed to a failure.

"I'll sit down anytime with any member of the court or the judiciary to get this thing resolved," Stephen Holmes said. "I mean, who's benefiting here? The lawyers. Why can't we sit down and resolve our differences."

Joe Giusti shared a similar opinion.

"No matter who wins the court case, the taxpayers lose because they're the one's footing the bill," Giusti said.

The remaining $20,827.34 in legal fees has been spent defending a wrongful termination lawsuit filed by Quiroga. Last year, commissioners voted to hire a lead attorney from Houston-based firm Minces at a rate of $325 per hour.

With the consent of Cox, who's paying for his own legal fees, Stevens told The Daily News he's logged 60 hours on the various cases at a rate of $66 per hour — a

total of $3,960. He said "staggering" attorney fees billed to the county could be considered unconscionable — meaning a judge could rule in a lawsuit that the fees aren't reasonable and refund the money.

Some commissioners defended the $200,000 price tag. Dennard said paying expensive attorneys fees with taxpayer money was not an ideal use of funds, but argued

it wa
Quiro
aged i
gover
consti
being

"We
eration
millio
public
badly
nard s

Clar
sary to
repres
taxpay



# LOCAL



**Ken Clark**



**Stephen Holmes**



**Joe Giusti**

expressed disappointment that compromise failed. At one point, the two sides negotiated a plan to create two positions, one reporting to commissioners and the other to judges. The issue of salary and a belief that each side had overstepped its governmental authority contributed to a failure.

"I'll sit down anytime with any member of the court or the judiciary to get this thing resolved," Stephen Holmes said. "I mean, who's benefiting here? The lawyers. Why can't we sit down and resolve our differences."

Joe Giusti shared a similar opinion.

"No matter who wins the court case, the taxpayers lose because they're the one's footing the bill," Giusti said.

The remaining

total of $3,960. He said "staggering" attorney fees billed to the county could be considered unconscionable — meaning a judge could rule in a lawsuit that the fees aren't reasonable and refund the money.

Some commissioners defended the $200,000 price tag. Dennard said paying expensive attorneys fees with taxpayer money was not an ideal use of funds, but argued

it was justified because Quiroga has mismanaged important parts of government and serious constitutional issues are being disputed.

"We can't allow operations worth many millions of dollars and public safety issues to be badly managed," Dennard said.

Clark said it's necessary to hire the best legal representation for the taxpayers, but conceded

he "was not aware of how those expenses would rack up." He argued the spending could stop if Cox would fill court positions approved commissioners. However, Cox insists he's simply preserving and protecting the constitution against commissioners who are overstepping their authority.

"If I have to file a lawsuit against a county judge who's violating the constitution, I will and I did," Cox said.

County Judge Mark Henry did not respond to a request for comment.

---

Contact reporter Chacour Koop at 409-683-5241 or chacour.koop@galvnews.



BEIRNE, MAYNARD & PARSONS, L.L.P.

1300 POST OAK BOULEVARD

SUITE 2500

HOUSTON, TEXAS 77056-3000

JOSEPH M. NIXON

BOARD CERTIFIED
CIVIL TRIAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

(713) 623-0887

FAX (713) 960-1527

DIRECT DIAL: (713) 871-6809
EMAIL: JNIXON@BMPLLP.COM

July 30, 2015

Mark W. Stevens
Attorney at Law
P.O. Box 8118
Galveston, Texas 77553

VIA FIRST CLASS MAIL,
CERTIFIED MAIL, AND
EMAIL markwandstev@sbcglobal.net

Re: Cause No. 15CV0583; *The Honorable Lonnie Cox, Local Administrative Judge, Galveston Co. v. The Honorable Mark Henry, County Judge, Galveston County*; in the 56th Judicial District Court of Galveston County, Texas

Dear Mr. Stevens:

I am writing so that you might remind your client in this case that he has the opportunity to appoint a candidate of his choice, without approval or consideration of the Galveston County Commissioner's Court, to the following positions:

| Court Manager | Annual salary: 22(E) | $63,695 |
| Administrative Specialist | Annual salary: 18(A) | $42,907 |
| Administrative Coordinator | Annual salary: 15(A) | $36,998 |
| Administrative Assistant | Annual salary: 14(A) | $35,215 |
| Administrative Officer | Annual salary: 19(A) | $45,079. |

On June 13, 2015, the Commissioner's Court created positions at your client's request. This is at least the second request of your client to fill these positions.

Please take note of your client's sworn testimony as to whether there was a critical current need for filling the position of Director of Justice Administration (annual salary up to $120,000) which the County terminated in July, 2014:

Q: (By Mr. Friedman) The District Judges have not had – or at least – the District Judges have not had anyone in the position of the Director of Justice Administration since July 24 of 2014; is that right?

A: [By Judge Cox] We've been operating without that person, yes.

D

Q:     And the Court Systems didn't shut down, didn't collapse.  The Court Systems continued to operate and maintain efficiently, correct?

A.     The Court Systems continued to operate, yes.

Hearing transcript Vol. 2, p. 118, line 20 to p. 117, line 4 (June 23, 2015).

As Ms. Bonnie Quiroga remains without a position with Galveston County, your client may appoint Ms. Quiroga to any of the above-referenced positions.

Very truly yours,

Joseph M. Nixon

**From:** Bluemer, Peri
**Sent:** Wednesday, August 12, 2015 10:36 AM
**To:** Cox, Lonnie; Sullivan, Kim; Roberts, Barbara; Grady, Patricia; Grady, John; Slaughter, Michelle; Ellisor, John; Neves, Kerry; Darring, Anne; Ewing, Jack
**Cc:** Boemer, Bob
**Subject:** FW: Court administrator system background

Hello:
Based on the information I received from the Legal department (attached and below), I wanted to reach out to all of you.

The hiring process takes some time. Therefore, in order to ensure your ability to place employees into the positions effective September 1st, I encourage you to begin the interview and hiring process now.

The court administrator system goes into effect in just three weeks.

I want to be very clear that The Human Resources Department is available to assist your efforts. We offer resume screening, pre-interviews and full interview packets as well as reference checking.

And, if you would like to consider any existing employees for these positions, we have a great INTERNAL Candidate interview tool as well. This tool is optional, but I wanted you to know it is available for you.

Internal candidates can interview during work hours.

Please let me know if there is anything we can do to assist with this process.
-Peri

Peri A. Bluemer
Chief Human Resources Officer
Galveston County, Texas

1

E

Peri.bluemer@co.galveston.tx.us

722 Moody, Galveston, Texas 77550 | ☎ 409-770-5350 | Fax: 409-766-4599|Cell: 409-692-5273



## Galveston County Human
## Resources
### Core Purpose
We Want To Be The Best We Can Be In Making Peoples'
Lives Easier.

### Strategies

❑ Follow Through To The Resolution Every Time

❑ Consistently Re-evaluate Ourselves And Make
   Course Corrections

❑ Provide One On One, Personal Communications

❑ Jump Through Hoops- Philosophy

❑ Be Open Minded To Change, Training And
   Feedback

❑ Ask Questions About Our Work

❑ Be Willing To Embrace Change

### Core Values



Service
Integrity
Engagement

---

**From:** Boemer, Bob
**Sent:** Tuesday, August 11, 2015 5:39 PM
**To:** Bluemer, Peri
**Subject:** Court administrator system background

Peri: What follows is the background for the creation of five positions that will, effective September 1, 2015, report to the district and statutory county court judges as court administrator system allowed under section 75.401 of the Texas Government Code.

On June 13, 2015 the Commissioners Court of Galveston County, Texas approved an order authorizing the creation of five full-time positions titled Court Manager, Administrative Specialist, Administrative Coordinator, Administrative Assistant, and Administrative Officer. These positions were intended to provide administrative support to the county's judicial officeholders. To comply with existing state law, the June 13 order created these positions under the office of the 56th Judicial District Court, whose officeholder, the Honorable Lonnie Cox, is the current Administrative Judge of the District Courts of Galveston County.

Commissioners Court took this action in response to a May 12, 2015 application signed by the Honorable Lonnie Cox, the Honorable Barbara E. Roberts and the Honorable Kimberly Sullivan requesting establishment of a court administrator system to serve the statutory county and district courts of Galveston County.

As of June 13, 2015, the Texas Government Code authorized the county courts at law of Galveston County, but not the district courts, to request and maintain a court administrator system. In recognition of this statutory obstacle to the request by the Honorable Cox on behalf of the Galveston County district judges, the June 13 order created requested positions in the office of the 56th Judicial District Court with the power of appointment vested in the holder of

2

that office. However, as of the date of this letter, the Honorable Cox has not made any appointments to the positions created by Commissioners Court.

The June 13 order also provided that, in the event SB 1913 was enacted into law and to be effective on September 1, 2015, then a court administrator system would be created for the Galveston County district, county and probate courts, the aforementioned positions would report to the district and statutory county judges collectively, and the position of "Court Manager" would be changed to "Court Administrator."

As you know, SB 1913 was signed into law and takes effect on September 1, 2015. Attached to this email are copies of SB 1913, as well as an excerpt of the minutes of the June 13, 2015 meeting of Commissioners Court authorizing the creation of a court administrator system and the aforementioned five positions under the collective supervision and control of the district and statutory county court judges effective September 1. While this is a new statutory provision, legal authority about other statutory positions reporting collectively to multiple judges have consistently held that such appointments are made by majority vote of the officeholders.

Please call me if you have any questions.

Bob Boemer

Robert B. Boemer
Galveston County Legal Department
Director
County Courthouse
722 Moody, 5ᵗʰ Floor
Galveston, Texas 77550-2317
(409) 770-5567 (direct)
(409) 770-5562 (main)
(409) 770-5560 (fax)

The information contained in this transmission and any attachments hereto is confidential information intended solely for the use of the individual(s) named above and may be protected from disclosure by privileges recognized in the law. If the reader of this message is not an intended recipient, the reader is hereby notified that any dissemination, distribution, copying, or use of this communication in any way is strictly prohibited.

# Mark Stevens

**From:** Mark Stevens [markwandstev@sbcglobal.net]
**Sent:** Wednesday, August 19, 2015 9:20 AM
**To:** 'jnixon@bmpllp.com'
**Attachments:** coxnixon081915.pdf

Mr. Nixon:

See the attached letter.

Mark W. Stevens

F

MARK W. STEVENS
ATTORNEY AT LAW
P.O. BOX 8118
GALVESTON, TEXAS 77553
409.765.6306
Fax 409.765.646
Email: markwandstev@sbcglobal.net

August 19, 2015

Joseph Nixon                                    Via Email/PDF
Beirne Parsons & Maynard LLP
Houston, Texas

Re: No. 15CV0583; The Hon. Lonnie Cox v. The Hon. Mark A. Henry; In the 56th District Court of Galveston County, Texas

Dear Sir:

This is in response to your letter of July 30, 2015, and Ms. Peri Bluemer's recent email to Judge Cox regarding "interviews", etc.

Paragraph 6 at Page 9 of that Temporary Injunction forbids the County Judge and all others acting in concert with him from *"Reassigning or relocating any employee who was an employee of Justice Administration on July 23, 2014, including but not limited to Bonnie Quiroga, Monica Gracia and Deputy Clint Purcell."*

Your proposal and Ms. Bluemer's are clearly intended to violate the above provision, on top of other many violations which have already occurred.

At this time, Judge Cox has no authority to act under SB 1913—and neither does County Judge Henry, Peri Bluemer or anybody else.

1

If at any time County Judge Henry or others feel it is necessary to act in contravention of the Temporary Injunction of July 6, the appropriate route is not to engage in self help, but to seek judicial authority, i.e., from the trial court, which may receive evidence as to your proposed action, and also as previous violations of the July 6, 2015 Order of Temporary Injunction.

Very truly yours,

Mark W. Stevens

cc: Judge Lonnie Cox

2

REPORTER'S RECORD


EXCERPT OF


GALVESTON COUNTY COMMISSIONERS COURT WORKSHOP


On the 19th day of August, 2015, the following excerpt from a video of Commissioners Court workshop occurred:



COMMISSIONER CLARK: All right. So what about the Judges?

JUDGE HENRY: You have my thought.

MR. CLARK: So you are saying just that one position, or are you saying all the positions?

JUDGE HENRY: Give them all. I don't think you can do just one.

COMMISSIONER CLARK: You think they ought to be paid all the same?

JUDGE HENRY: That would seem reasonable, maybe not.

COMMISSIONER CLARK: So are you suggesting do away with the entire stipend or a portion of it, taken back to where they were before they got this stipend increase a couple years back?

COMMISSIONER DENNARD: Do you know what that the dollar amount was, the stipend was?

JUDGE HENRY: Yeah, it was 15. It was 15 the last year.

COMMISSIONER CLARK: It was -- it was 15, but I think the Court was also paying 9300. That's why I suggested we go back and look at that.

MR. DELAC: That's going to require some research, though. I am not ready for that yet.

COMMISSIONER DENNARD: It went up significantly.

COMMISSIONER CLARK: Do you have one of these from 2010?

MR. DELAC: It's going to be in the budget book. Yeah. It's going to take a little time bit of time to go find and verify it. I just want to make sure I give you correct numbers. I don't want to tell you something off the top of my head and --

JUDGE HENRY: I don't remember 9300 from anything, so I am guessing about (inaudible).

COMMISSIONER CLARK: I only remember raising it once form 92- or 9300 up to the 18,000.

JUDGE HENRY: No, we went from 15 to 18. The legislature authorized an increase up to 18.

COMMISSIONER CLARK: Yeah, but I thought we weren't paying the full 15.

JUDGE HENRY: I thought we were.

COMMISSIONER CLARK: I'm checking, just verify that.

COMMISSIONER HOLMES: 2013 the State paid 125, total compensation of 140.

JUDGE HENRY: Yes, we paid 15. Is that what yours is at?

COMMISSIONER HOLMES: That's 2013.

JUDGE HENRY: I dont' think it's changed since 2011.

COMMISSIONER CLARK: Can you go back to see what it was prior to that, like 2009?

COMMISSIONER HOLMES: Sure. 2009 the State paid 125, total compensation 140.

JUDGE HENRY: Say that again.

COMMISSIONER HOLMES: The same thing, 125.

JUDGE HENRY: What year?

COMMISSIONER HOLMES: 2009.

JUDGE HENRY: Yeah, see.

MR. DELAC: It looks like in 2008 and 2009 it was both 15,000.

COMMISSIONER CLARK: Okay.

JUDGE HENRY: That's my misunderstanding.

MR. DELAC: '09 and '10 are the same. '09 and '10 are 140,000 and they paid 125, so it's 15.

COMMISSIONER DENNARD: Yes. So what happened, I guess, what happened with that is even though the supplement increased a little bit, by continuing to pay the full supplement rather than drawing it back down in response to the State's increase of the base, we were then hit with additional -- significant additional costs on the County Court side because the statute says you have got to pay the County

Courts in line with the District Courts.

MR. DELAC: You can't pay less than a thousand dollars less.

COMMISSIONER DENNARD: So -- so it wasn't the delta between the supplements. It was a combination. It was basically the total increase in salary which sucked everything up, which cost us some on the District side but a ton on the County side as they were pulled up.

COMMISSIONER GIUSTI: So what exactly are you talking about doing with it?

COMMISSIONER DENNARD: Reducing the amount of salaries that we are paying toward our District and County Judges in order to save significant money.

COMMISSIONER GIUSTI: How much?

COMMISSIONER DENNARD: That's the discussion. I think one factor is the amount of attorneys' fees that we're incurring.

COMMISSIONER GIUSTI: We're incurring more attorney's fees because you are having for trials.

JUDGE HENRY: No. We are incurring attorneys' fees because one of them sued me.

COMMISSIONER GIUSTI: Oh, those -- those fees. This could kind of look pretty retaliatory, huh?

COMMISSIONER DENNARD: I don't think it's a

question of retaliatory. I think it's a question of somebody has got to pay the bill. So where are those going to come from? Are they going to come out of general revenues or are they going to come out of the -- come from the folks who are responsible for the costs? That is the issue.

COMMISSIONER GIUSTI: They will argue who is responsible for the costs.

COMMISSIONER DENNARD: They will. And if they were, I guess, County Commissioners, they could make that judgment.

COMMISSIONER GIUSTI: The Courts (inaudible) make that judgment.

COMMISSIONER DENNARD: I think from a budget perspective, I suspect this Court will make that judgment.

COMMISSIONER CLARK: Yeah. (Inaudible). So that would be if we did away with the supplement, that would be a savings of 180,000?

JUDGE HENRY: It would be more than that. It would affect my portion, too.

MR. DELAC: I have already got it figured out.

JUDGE HENRY: What?

MR. DELAC: The 200, I assume your whole --

the whole 25 would come out, right?

JUDGE HENRY: No. It's towards the 90 percent. Plus it's not -- take whatever their total is.

MR. DELAC: It would be 140. So by (inaudible) 126.

JUDGE HENRY: Right.

COMMISSIONER CLARK: As opposed to 165.

MR. DELAC: 115.

MR. CLARK: They changed the percentage.

JUDGE HENRY: That was just the supplement, not the salary. The salary already was the percentage.

COMMISSIONER CLARK: Correct. So you are saying your salary would be 126,000?

JUDGE HENRY: Yes. No, no, plus the new supplement of 25 too. So it would an additional 16,000.

MR. DELAC: (Inaudible).

COMMISSIONER DENNARD: So (inaudible) I wasn't listening.

JUDGE HENRY: It would come out to 151

MR. DELAC: The difference is 16,200.

JUDGE HENRY: So 180 plus (inaudible).

MR. DELAC: I can -- I can tell you what it is. All right.

COMMISSIONER DENNARD: (Inaudible) benefits?

MR. DELAC: 238,000. That's the benefits.

JUDGE HENRY: (Inaudible).

MR. DELAC: Yes, sir.

COMMISSIONER DENNARD: 232. And that's based upon what?

MR. DELAC: Say that again? It's 238,000.

JUDGE HENRY: That's based on not paying 196,000 (inaudible).

COMMISSIONER DENNARD: Is that like zero supplements?

MR. DELAC: Yes.

COMMISSIONER DENNARD: Well, I know that I heard I know at least one -- I think more -- other elected officials had been pressing during the legislative session to try to reduce your salary. I know has been a push to reduce your salary judgment and that there's a feeling that the County Judge is making too much money. You know, and if we are going to, I guess, do what some (inaudible) to reduce your salary, that would necessitate legal and statutory (inaudible) reductions corresponding with that. And it's a function of the statute. It's really not anything that we are doing from that front.

JUDGE HENRY: True. I would think it's safe to say that (inaudible). That seems to be the

answer to everything we do. I guess what I would like to do is think about it for a little bit. I am going over 11:30 meeting to go T. I. S. consortium, so I was going to go ahead and probably head out now. And so do you want break up for lunch?

COMMISSIONER HOLMES: Whenever you are ready.

* * *

# REPORTER'S CERTIFICATE

THE STATE OF TEXAS    )

COUNTY OF GALVESTON       )

    I, Dale W. Lee, Certified Shorthand Reporter in and for the State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of the excerpt of the Commissioners Court workshop, to the best of my ability.

    WITNESS MY OFFICIAL HAND this the 20th day of August, 2015.

/s/Dale W. Lee, CSR
Dale W. Lee, Texas CSR 2561
Expiration Date: 12/31/16
Official Court Reporter
56th District Court
Galveston County, Texas
600 59th St., Ste 3203
Galveston, Texas 77551